## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES SECURITIES AND )
EXCHANGE COMMISSION, )
                                 )
        Plaintiff, )
                                 )      Case No. 12-cv-12109-VAR-RSW
        v. )
                                 )      Hon. Victoria A. Roberts
KWAME M. KILPATRICK, JEFFREY )
BEASLEY, CHAUNCEY C. MAYFIELD, )
and MAYFIELD GENTRY REALTY )      **DEFENDANT CHAUNCEY**
ADVISORS, LLC, )      **MAYFIELD'S MOTION TO**
                                 )      **DISMISS UNDER RULE 12(B)(6)**
        Defendants. )
_____ )

       DEFENDANT CHAUNCEY C. MAYFIELD, by and through counsel, moves to dismiss

the Complaint of the Securities and Exchange Commission ("SEC") under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  As outlined in the attached Memorandum of Points and

Authorities, the SEC has failed to state a claim against Mr. Mayfield upon which relief can be

granted.  The Complaint must be dismissed.

                                 Respectfully submitted,

                                 /s/ *Terence Healy*
                                 A. Scott Bolden
                                 Terence M. Healy
                                 Daniel Z. Herbst
                                 REED SMITH LLP
                                 1301 K Street NW
                                 Suite 1100 – East Tower
                                 Washington, DC 20005
                                 (202) 414-9200
                                 (202) 414-9299 (fax)
                                 thealy@reedsmith.com

Hans J. Massaquoi (P44748)
LEWIS & MUNDAY, PC
660 Woodward Avenue
Suite 2490, First National Building
Detroit, MI  48226
Phone: (313) 961-2550
Fax: (313) 961-1270
hmassaquoi@lewismunday.com

ATTORNEYS FOR DEFENDANT
CHAUNCEY MAYFIELD

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12-cv-12109-VAR-RSW |
| v. | ) ) | Hon. Victoria A. Roberts |
| KWAME M. KILPATRICK, JEFFREY BEASLEY, CHAUNCEY C. MAYFIELD, and MAYFIELD GENTRY REALTY ADVISORS, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT CHAUNCEY MAYFIELD'S MOTION TO DISMISS UNDER RULE 12(B)(6)**

---

A. Scott Bolden
Terence M. Healy
Daniel Z. Herbst
REED SMITH LLP
1301 K Street NW
Suite 1100 – East Tower
Washington, DC 20005

Hans J. Massaquoi (P44748)
LEWIS & MUNDAY, PC
660 Woodward Avenue
Suite 2490, First National Building
Detroit, MI  48226

Attorneys for Defendant Chauncey
Mayfield

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ i

STATEMENT OF ISSUES ............................................................................................... iv

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY ............................ v

STATEMENT OF NON-CONCURRENCE ........................................................................ vi

INTRODUCTION ............................................................................................................ 1

PROCEDURAL BACKGROUND ..................................................................................... 3

ARGUMENT ................................................................................................................... 6

I.     STANDARD OF REVIEW ..................................................................................... 6

II.    THE SEC HAS FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT
       CLAIMS OF "SCHEME" LIABILITY UNDER SECTION 17(a), RULE 10b-5,
       OR SECTION 206(1) ........................................................................................... 7

       A.    Scheme Liability Requires the Commission of an Inherently Deceptive
             Act ........................................................................................................... 8

       B.    The SEC Has Not Alleged Chauncey Mayfield Engaged in Any Deceptive
             Act ........................................................................................................... 9

III.   THE SEC HAS FAILED TO PLEAD FACTS SHOWING CHAUNCEY
       MAYFIELD HAD A DUTY TO DISCLOSE ANYTHING TO THE PENSION
       BOARDS THAT WAS NOT IN FACT DISCLOSED ................................................ 11

       A.    The Complaint Does Not Even Plead That Any of the Alleged Omissions
             Were Material ......................................................................................... 12

       B.    Mr. Mayfield Had No Duty to Disclose the Hotels and Air Travel Because
             They Were Not Material As A Matter of Law ............................................ 13

IV.    THE SEC HAS FAILED TO PLEAD A VIABLE CLAIM AGAINST
       CHAUNCEY MAYFIELD UNDER THE INVESTMENT ADVISERS ACT ................ 15

       A.    The Fraud Provisions of Section 206 Do Not Apply To "Persons
             Associated with Investment Advisers" Like Mr. Mayfield ......................... 16

       B.    Mayfield Is Not Liable Under Section 206 of the Investment Adviser Act
             For the Same Reasons the SEC's Other Fraud Claims Fail ........................ 17

CONCLUSION.............................................................................................................18

# TABLE OF AUTHORITIES

## Other Authorities

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................. 6, 12

*Association of Cleveland Fire Fighters v. City of Cleveland*,
   502 F.3d 545 (6th Cir. 2007) ........................................................................ 6

*Basic v. Levinson*,
   485 U.S. 224 (1988)...................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ 6

*Bovee v. Coopers & Lybrand C.P.A.*,
   272 F.3d 356 (6th Cir. 2001) ........................................................................ 7

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) ...................................................................... 11

*In re Air Crash Disaster at Detroit Metro. Airport v. Northwest Airlines, Inc.*,
   737 F. Supp. 406 (E.D. Mich. 1989)............................................................ 7

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) ...................................................... 8, 9

*In re DeLorean Motor Co.*,
   991 F.2d 1236 (6th Cir. 1993) ...................................................................... 6

*In re Global Crossing Ltd. Sec. Litig.*,
   322 F. Supp. 2d 319 (S.D.N.Y. 2004) ...................................................... 7, 8

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d 472 (S.D.N.Y. 2005) .......................................................... 8

*In re Time Warner Sec. Litig.*,
   9 F.3d 259 (2d. Cir. 1993) .......................................................................... 11

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) .......................................................................... 9

*Milton v. Van Dorn Co.*,
   961 F.2d 965 (1st Cir. 1992)........................................................................ 12

*Monetta Fin. Services, Inc. v. SEC*,
   390 F.3d 952 (7th Cir. 2004) ...................................................................... 14

*Otis & Co. v. Securities and Exchange Commission*,
   106 F.2d 579 (6th Cir. 1939) ...................................................................... 12

*PIMCO Advisors Fund Mgmt. LLC*,
   341 F. Supp. 2d 454 (S.D.N.Y. 2004) ........................................................ 16

*Powers v. British Vita, P.L.C.*,
   57 F.3d 176 (2d. Cir. 1995) ...................................................................... 11, 13

*SEC v. Blavin*,
   760 F.2d 706 (6th Cir. 1985) ........................................................................ 11

*SEC v. Capital Gains Research Bureau*,
   375 U.S. 180 (1963).................................................................................. 15,17

*SEC v. Delphi Corp.*,
   2008 WL 4539519 (E.D. Mich. Oct. 8, 2008) ......................................... 11

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................................... 7, 9

*SEC v. KPMG, LLP*,
   412 F. Supp. 2d 349 (S.D.N.Y. 2006) ................................................... 8, 9

*SEC v. Lucent Techs., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009) ....................................................... 8, 9

*SEC v. Slocum, Gordon & Co.*,
   334 F. Supp. 2d 144 (D.R.I. 2004) .......................................................... 17

*SEC v. U.S. Environmental, Inc.*,
   155 F.3d 107 (2d Cir. 1998) ...................................................................... 8

*SEC v. Zandford*,
   535 U.S. 813 (2002).................................................................................... 8

*Sullivan v. Chase Inv. Serv. Of Boston*,
   434 F. Supp. 171 (N.D. Cal. 1977) ..................................................... 16, 17

*TCS Capital Mgmt., LLC v. Apax Partners, L.P.*,
   No. 06 Civ. 13447, 2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) ............ 9

*United States v. Naftalin*,
   441 U.S. 768 (1979).................................................................................... 7

*Vennittilli v. Primerica, Inc.*,
   943 F. Supp. 793 (E.D. Mich. 1996)......................................................... 7

*Vernazza v. SEC*,
   327 F.3d 851 (9th Cir. 2003) ................................................................... 15

## Statutes

15 U.S.C. § 77q.................................................................................... *passim*

15 U.S.C. § 78j..................................................................................... *passim*

15 U.S.C. § 80b.................................................................................... *passim*

## Regulations

17 C.F.R. § 240.10b-5............................................................................... 4

17 C.F.R. § 275.206(4)-5 ............................................................................................................ 13

## <u>STATEMENT OF ISSUES</u>

1.      Whether the SEC's claims against Chauncey Mayfield under Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933, Rules 10b-5(a) and 10b-5(c) of the Exchange Act of 1934, and Section 206 of the Investment Advisers Act of 1940 should be dismissed for failure to state a claim upon which relief can be granted; namely, whether the claims of fraud against Mr. Mayfield based on "scheme liability" must be dismissed where the SEC has failed to plead Mr. Mayfield committed a single "deceptive act," a required element for scheme liability to exist under the law.

2.      Whether the SEC's claims against Chauncey Mayfield under Sections 17(a)(2) of the Securities Act of 1933 and Rule 10b-5(b) of the Exchange Act of 1934 should be dismissed for failure to state a claim upon which relief can be granted; namely, whether the SEC's claims of fraud against Mr. Mayfield for failing to disclose to the trustees of the Detroit pension boards four instances where hotels and/or air travel were allegedly provided to the former Mayor and Treasurer of the City of Detroit should be dismissed where the SEC has not alleged the trips were material to the boards and where the trips were unrelated to the securities offered and sold or commissions received.

3.      Whether the SEC's claim against Chauncey Mayfield under Section 206 of the Investment Advisers Act of 1940 should be dismissed for failure to state a claim upon which relief can be granted; namely, whether the claim of fraud against Mr. Mayfield under Section 206 should be dismissed because he is not an "investment adviser" within the meaning of the statute and cannot be liable under its provisions as a matter of law.

## STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY

1. *SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011)

2. *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342 (D.N.J. 2009)

3. *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005)

4. *SEC v. KPMG, LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006)

5. *In re Time Warner Sec. Litig.*, 9 F.3d 259 (2d. Cir. 1993)

6. *Powers v. British Vita, P.L.C.*, 57 F.3d 176 (2d. Cir. 1995)

7. *In re Stein*, Admin. Proceeding File 3-9309, 1999 WL 756083 (SEC Initial Decision Release No. 150 (Sept. 27, 1999)

8. *PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454 (S.D.N.Y. 2004)

9. *Sullivan v. Chase Inv. Serv. Of Boston*, 434 F. Supp. 171 (N.D. Cal. 1977)

## <u>STATEMENT OF NON-CONCURRENCE</u>

Counsel for Chauncey Mayfield attempted to obtain the concurrence of the Securities and Exchange Commission in this motion to dismiss its Complaint, as required under Local Rule 7.1(a).  Despite reasonable effort, concurrence could not be obtained.

**<u>INTRODUCTION</u>**

The SEC has charged Chauncey C. Mayfield, a successful Detroit-area businessman, with violating the federal securities laws through his work on behalf of the General Retirement System of the City of Detroit ("GRS") and the Police and Fire Retirement System of the City of Detroit ("PFRS").  For several years, Mr. Mayfield provided real estate management and advisory services to the GRS and PFRS.  The SEC does not allege these services were performed fraudulently, or that they were conducted in a manner that caused financial losses to the pension funds or their beneficiaries.  Indeed, under Mr. Mayfield's stewardship the real estate holdings of both the GRS and PFRS were well managed and generally increased in value, all to the benefit of the funds and their pensioners.

The SEC's entire case against Mr. Mayfield is based instead on four instances in which it alleges he provided hotel rooms and/or air travel to Kwame Kilpatrick ("Kilpatrick"), the former Mayor of Detroit, and Jeffrey Beasley ("Beasley"), the former Treasurer.  The SEC claims Mr. Mayfield committed fraud by not disclosing these facts to the trustees of the GRS and PFRS before doing further business with the pension funds.  The SEC does not allege, nor could it, that Mr. Mayfield *ever* made an inaccurate or misleading statement to the pension funds or their trustees, or that he engaged in any other deceptive act.  The SEC's case thus rests on an alleged sin of *omission*, that Mr. Mayfield had a duty to advise the trustees about the hotels and air travel, and that they would have found this information material.

Based on this alleged omission, the SEC has brought a host of charges against Mr. Mayfield, including violations of the antifraud provisions of the federal securities laws and claims of "scheme" liability.  Indeed, the SEC has sprinkled the word "scheme" throughout its twenty-seven page Complaint, as if the word itself is some sort of talisman creating a legal

- 1 -

violation.  Despite the volume of its charges, the SEC has failed to plead a single claim against Mr. Mayfield upon which relief can be granted.

The SEC has failed to plead sufficient facts to show Mr. Mayfield had a duty to disclose any information to the trustees of the pension funds beyond what was already disclosed or known to them.  Mr. Mayfield had no affirmative duty to volunteer the facts of the alleged hotel rooms and air travel and – given the long and successful business relationship he had with both the GRS and PFRS – there is no reason to believe they would have found this information particularly relevant.  Absent a duty to disclose this information, Mr. Mayfield cannot be found liable for not having done so.  Silence is not fraud.  The SEC's claims based on material misstatements must be dismissed.

As to the SEC's allegations of "scheme" liability, the case law is clear that for a fraudulent "scheme" to exist under the federal securities laws there must be a *deceptive act*, separate from any alleged misstatements to investors.  Courts have repeatedly held that the SEC cannot take a misstatement case and bootstrap it into also being a "scheme" to defraud simply by calling it so.  There must be an independent deceptive act.  In this case, the SEC has failed to plead a single deceptive act by Mr. Mayfield in furtherance of the alleged "scheme" (there is nothing "deceptive" about providing someone a hotel room or a ride on an airplane).  All of the claims based on "scheme" liability must be dismissed.

Chauncey Mayfield had a long and successful history of providing professional services to the pension funds of Detroit, dating back to 2001.  The SEC's case against him is based on four isolated instances from 2007, all unrelated to the work he performed for the GRS and PFRS. Interestingly, after the criminal indictment against Beasley was unsealed and the facts related to the hotels and air travel became publicly known, Mr. Mayfield approached the boards of both the

GRS and PFRS and advised them that MGRA was the party identified as "Company A" in the indictment (and had provided the travel to Kilpatrick and Beasley).  Even knowing these facts, both the GRS and PFRS trustees decided *to continue* their business relationship with MGRA.

The SEC has failed to plead sufficient facts to sustain any of the claims it has brought. The Complaint should be dismissed.

## PROCEDURAL BACKGROUND

On May 9, 2012, the SEC filed this action against Chauncey Mayfield, Kilpatrick, Beasley, and MayfieldGentry Realty Advisors, LLC ("MGRA").  The SEC has charged Mr. Mayfield with violating Sections 17(a)(1), 17(a)(2), and 17(a)(3)[1] of the Securities Act of 1933 ("Securities Act"); Section 10(b)[2] of the Securities Exchange Act of 1934 ("Exchange Act");

---

[1]  Section 17(a) provides:

> It shall be unlawful for any person in the offer or sale of any securities or any security-based swap agreement . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud,
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Securities Act of 1933 § 17(a)(1)-(3), 15 U.S.C. § 77q(a)(1)-(3).

[2]  Section 10(b) provides:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange – To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security

Continued on following page

- 3 -

Rules 10b-5(a), 10b-5 (b), and 10b-5(c)[3] under the Exchange Act; and Section 206(1) and

206(2)[4] of the Investment Advisers Act of 1940 ("Advisers Act").

The factual allegations in the SEC Complaint are simple.  The SEC alleges that on four

occasions in 2007, MGRA provided hotels and/or air travel to Beasley and Kilpatrick.  The SEC

---

Continued from previous page
> not so registered, any manipulative or deceptive device or contrivance in
> contravention of such rules and regulations as the Commission may prescribe as
> necessary or appropriate in the public interest or for the protection of investors.

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b).

[3] Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange,

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or to omit to state a material
> fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would
> operate as a fraud or deceit upon any person, in connection with the purchase or
> sale of any security.

Rule 10b-5; 17 C.F.R. § 240.10b-5.

[4] Sections 206(1) and 206(2) provide:

> It shall be unlawful for any investment adviser, by use of the mails or any means
> or instrumentality of interstate commerce, directly or indirectly—

> (1) to employ any device, scheme, or artifice to defraud any client or prospective
> client;

> (2) to engage in any transaction, practice, or course of business which operates as
> a fraud or deceit upon any client or prospective client;

Section 206(1)-(2) of the Investment Advisers Act of 1940; 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

alleges Beasley contacted Mr. Mayfield in January 2007 and told him that he and Kilpatrick were traveling to Charlotte, NC, and wanted recommendations for hotels. *See* Compl. ¶ 59-60. The purpose of this trip – according to Beasley – was for he and Kilpatrick to inspect one of the pension fund properties (a legitimate business purpose, if true). *Id.* ¶ 59. The SEC states, however, that Beasley "lied to Mayfield" as to the real reason for the trip. *Id.* ¶ 67. Beasley requested MGRA pay for the hotel rooms for this trip, which it did. *Id.* ¶ 62.

The SEC also alleges that in April 2007, Mr. Mayfield asked Beasley to accompany him on a trip to Las Vegas. *Id.* ¶ 68. Beasley then, without consulting with Mr. Mayfield, invited Kilpatrick and others to come on the trip as well. *Id.* ¶ 69. MGRA paid the expenses associated with the trip. *Id.* ¶ 75.

The SEC further alleges Beasley approached Mr. Mayfield in July 2007 and September 2007 and asked him to charter planes for Kilpatrick to travel to Tallahassee and Bermuda, respectively. *Id.* ¶¶ 84, 98. The stated reason for both trips, according to Beasley, was to raise money for the Kilpatrick Civic Fund (a charitable organization which, unbeknownst to Mr. Mayfield and others at the time, was apparently a fraud). *Id.* ¶¶ 85, 99. The SEC alleges MGRA covered the costs of the aircraft charters, despite the fact that by the time of the Bermuda trip Mr. Mayfield was becoming "leery" of Beasley's requests.[5] *Id.* ¶¶ 86, 100. Based on the SEC Complaint, it appears Beasley's statements to Mr. Mayfield as to the reasons for the Tallahassee and Bermuda trips were also lies. *Id.* ¶¶ 92-93, 104.

The SEC has *not* pled that Mr. Mayfield ever made an inaccurate or misleading statement to either the GRS or PFRS or any of the trustees. *See generally* Complaint. The SEC has not

---

[5] Subsequent to the Bermuda trip, Beasley again approached Mr. Mayfield asking for air travel for Kilpatrick. Mr. Mayfield rejected this request.

pled that Mr. Mayfield had any kind of agreement or understanding with Beasley or Kilpatrick that the hotels and air travel were being provided in exchange for their support for MGRA continuing to receive business from the pension funds.  *See id.*

## ARGUMENT

The SEC has failed to state a claim against Chauncey Mayfield upon which relief can be granted.  The Complaint should be dismissed under Rule 12(b)(6).

## I.      STANDARD OF REVIEW

The Supreme Court has held a complaint must be dismissed where it does not state sufficient facts to show a claim for relief that "is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).  Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic,* 550 U.S. at 555.

While this pleading standard is liberal, it requires more than the bare assertion of legal conclusions.  *In re DeLorean Motor Co*., 991 F.2d 1236, 1240 (6th Cir. 1993).  Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.  *DeLorean*, 991 F.2d at 1240.

When fraud is alleged, Federal Rule of Civil Procedure 9(b) requires that the allegations "be stated with particularity."  The particularity requirement of Rule 9(b) serves three purposes:

> 1) it ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; 2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs-a 9(b) claimant must know what his claim is when he files; and 3) it seeks to protect defendant from unfounded charges of wrongdoing which injure their reputations and goodwill.

*Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361-2 (6th Cir. 2001) (quoting *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 798 (E.D. Mich. 1996)). Consequently, "[c]onclusory allegations that a defendant's conduct was fraudulent are insufficient." *In re Air Crash Disaster at Detroit Metro. Airport v. Northwest Airlines, Inc.,* 737 F. Supp. 406, 407 (E.D. Mich. 1989); *Bovee*, 272 F.3d at 361. "Instead, the complaint must describe the conduct that allegedly constitutes the fraud with some specificity." *Id*. "Plaintiffs may not simply rely on the proposition that Defendants must have known or should have known of, and participated in, the fraud." *Bovee*, 272 F.3d at 361.

## II. THE SEC HAS FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT CLAIMS OF "SCHEME" LIABILITY UNDER SECTION 17(a), RULE 10b-5, OR SECTION 206(1)

The SEC has charged Mr. Mayfield with violating Sections 17(a)(1) and 17(a)(3) of the Securities Act, Rules 10b-5(a) and 10b-5(c) of the Exchange Act, and Section 206(1) of the Advisers Act. These sections relate to what is known as "scheme" liability and are distinct from the statutory proscriptions against making material misstatements or omissions.[6] Scheme liability, by its nature, "hinges on the performance of an inherently <u>deceptive act</u> that is distinct from an alleged misstatement." *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (emphasis added). Without a deceptive act, there can be no scheme. *Id.*

---

[6] "Each subsection [of Section 17(a)] proscribes a distinct category of misconduct." *United States v. Naftalin*, 441 U.S. 768, 774 (1979); *In re Global Crossing Ltd. Sec. Litig*., 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004) ("Claims for engaging in a fraudulent scheme and for making a fraudulent statement or omission are … distinct claims, with distinct elements.").

Thus, to state a claim for scheme liability, the SEC must plead facts showing a deceptive act, separate and apart from any alleged misstatements (or omissions) to investors. In this case, the SEC has failed to plead *any* deceptive act by Mr. Mayfield (there is certainly nothing deceptive about providing hotel rooms and airplane rides). The only allegations against him are that he failed to *disclose* the hotels and air travel to the trustees. The SEC has, as a result, failed to meet a basic element for establishing scheme liability under the statutes.

**A.      Scheme Liability Requires the Commission of an Inherently Deceptive Act**

For scheme liability to exist, a defendant must have "under[taken] a deceptive scheme or course of conduct that went beyond the misrepresentations" to investors. *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005). Scheme liability requires proof of "manipulative" conduct distinct from mere misstatements. *SEC v. KPMG, LLP*, 412 F. Supp. 2d 349, 371 (S.D.N.Y. 2006). As a result, scheme cases typically involve "sham" transactions or other "inherently deceptive" acts. *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 359-61 (D.N.J. 2009). At the heart of a scheme, there must be conduct which is in itself deceptive, such as market manipulation, "wash" sales, factoring of worthless receivables, or the looting of a client's account. *See In re Global Crossing Ltd. Sec. Litig*., 322 F. Supp. 2d 319, 335-36 (S.D.N.Y. 2004); *SEC v. U.S. Environmental, Inc.*, 155 F.3d 107, 112 (2d Cir. 1998); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005); *SEC v. Zandford*, 535 U.S. 813, 820 (2002).

The SEC cannot take a plain disclosure case (as this case is at its core) and turn it into also being a "scheme" to defraud simply by labeling it such. "[W]here the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, <u>courts have routinely rejected</u> the SEC's attempt to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a

'misstatement.'"  *Kelly*, 817 F. Supp. 2d at 343 (emphasis added).  In *Lucent*, for example, the court dismissed the SEC's claims of scheme liability where the case centered on accounting fraud and misstatements in a company's financial statements.  *Lucent,* 610 F. Supp. 2d at 359-61.  Similarly, in *SEC v. KPMG*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006), the court held that an auditing firm which issued clean audit opinions to Xerox, despite evidence of widespread accounting irregularities at the company, could not be found to have engaged in a scheme.  The court found the facts "present[ed] a classic misstatement case."  412 F. Supp. 2d at 377.  The *KPMG* court noted, "The SEC does not posit how, in any concrete manner, the misstatements it alleges could be construed as a device or scheme."  *Id.*  The same is true here.[7]

**B.     The SEC Has Not Alleged Chauncey Mayfield Engaged in Any Deceptive Act**

The SEC's Complaint is devoid of any suggestion of deception by Mr. Mayfield.  The SEC alleges that, in January 2007, Beasley contacted Mr. Mayfield and asked him to make hotel arrangements for Beasley and Kilpatrick to inspect one of the pension fund properties in Charlotte.  *See* Compl. ¶¶ 59-60.  The SEC admits it was a regular and proper practice for the trustees to inspect properties held by the funds.  *Id.* ¶ 57.  Had the true purpose of the trip been a building inspection, as Beasley told Mr. Mayfield, it would have been entirely proper for MGRA to have paid the expenses.  There was no "deception" by Mr. Mayfield in relation to anything about the Charlotte trip.

---

[7]     Courts have reached the same result in private securities litigation.  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (rejecting assertions of scheme liability where "sole basis for such claims is alleged misrepresentations or omissions"); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 476 (S.D.N.Y. 2005) (rejecting scheme liability claim where complaint "fail[ed] to allege that there was a scheme to defraud that went beyond the misrepresentations themselves"); *TCS Capital Mgmt., LLC* v. *Apax Partners, L.P.*, No. 06 Civ. 13447, 2008 WL 650385, at *22 (S.D.N.Y. Mar. 7, 2008) (rejecting scheme liability where the allegations were "nothing more than a reiteration of the misrepresentations and omissions that underlie [the] disclosure claim").

The SEC also alleges Beasley approached Mr. Mayfield in July and September 2007 to charter aircraft for Kilpatrick to fly to Tallahassee and Bermuda.  *Id.* ¶¶ 84, 98.  Mr. Mayfield was told the reason for these trips was to raise money for the Kilpatrick Civic Fund, a supposed-charitable organization.  *Id.* ¶¶ 85, 99.  Mr. Mayfield agreed to make arrangements for the charters, but was growing concerned by September 2007 of these requests from Beasley.  *Id.* ¶¶ 86, 100.  The SEC has not pled how anything about Mr. Mayfield's actions in this regard was "deceptive" in nature.

In April 2007, the SEC alleges Mr. Mayfield asked Beasley to accompany him on a trip to Las Vegas.  *Id.* ¶ 68.  Beasley then, without asking Mr. Mayfield, invited Kilpatrick and others to come on the trip as well.  *Id.* ¶ 69.  MGRA paid all the expenses associated with the trip.  *Id.* ¶ 75.  Again, there was nothing "deceptive" about Mr. Mayfield inviting Beasley on this trip, in his acquiescing to Kilpatrick coming along, or in MGRA paying the expenses, as alleged.  The SEC has simply pled no deceptive act by Mr. Mayfield.

In fact, to the extent there was any deception pled in the SEC's Complaint, Mr. Mayfield was the *victim* of that deception.  First, as to the trip to Charlotte, Beasley told Mr. Mayfield the reason he and Kilpatrick were traveling there was to inspect a building.  *Id.* ¶ 59.  This statement was false.  The SEC admits as much, acknowledging that "Beasley later <u>lied to Mayfield</u>."  *Id.* ¶ 63 (emphasis added).  Similarly, for both the Tallahassee and Bermuda trips, Beasley told Mr. Mayfield the purpose of the trips was to raise money for the Kilpatrick Civic Fund.  *Id.* ¶¶ 85, 99.  Again, these statements by Beasley were apparently false (as was the Civic Fund itself).  As such, the only deception the SEC has pled is that of Beasley lying to Mr. Mayfield.

In the end, the SEC is left with nothing more than a simple disclosure case.  There was nothing illicit, improper, or deceptive about MGRA covering expenses for hotel rooms and air

- 10 -

travel.  The SEC can argue these facts should have been disclosed to the pension boards, but it has failed to plead anything approaching a "scheme."  The claims under Sections 17(a)(1) and 17(a)(3) , Rules 10b-5(a) and 10b-5(c), and Section 206(1) must be dismissed.

### III.   THE SEC HAS FAILED TO PLEAD FACTS SHOWING CHAUNCEY MAYFIELD HAD A DUTY TO DISCLOSE ANYTHING TO THE PENSION BOARDS THAT WAS NOT IN FACT DISCLOSED

The SEC alleges Mr. Mayfield violated Section 17(a)(2) of the Securities Act and Rule 10b-5(b) of the Exchange Act by failing to disclose to the pension boards that he had provided hotel rooms and/or air travel to Kilpatrick and Beasley on four occasions.  The SEC does not allege Mr. Mayfield ever made an *affirmative* "untrue statement of material fact" to any of the pension board trustees.  Rather, it alleges he committed fraud by *omission* in not disclosing the hotel rooms and air travel to the trustees in advance of doing further business with the funds.  These claims – which stretch the elasticity of the antifraud provisions beyond limit– must be dismissed under Rule 12(b)(6) because the SEC has not pled facts sufficient to show Mr. Mayfield had a duty to disclose any material facts not already known to the boards.  Silence is not fraud.

To state a claim based on misstatements or omissions, the SEC must plead with particularity that the defendant made "untrue statements of material fact" or omitted material facts "necessary in order to make the statements made . . .  not misleading."  *City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005); *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985); *SEC v. Delphi Corp.*, 2008 WL 4539519, *3, *8-*9 (E.D. Mich. Oct. 8, 2008).  The federal securities laws do not require a defendant to disclose every fact merely because an investor would very much like to know it.  *In re Time Warner Sec. Litig.*, 9 F.3d 259, 267 (2d. Cir. 1993).  A duty to disclose only attaches in situations where a defendant is required to speak *on that subject*.  *See Powers v. British Vita*, P.L.C. 57 F.3d 176,

189 (2d. Cir. 1995) (duty to disclose required disclosure of pertinent, material information

relevant to available investment options).  In other words, an omission is only actionable where

the defendant has a duty to disclose *material omitted facts*.  *See Basic v. Levinso*n, 485 U.S. 224,

238-39 (1988).[8]

> ### A.      The Complaint Does Not Even Plead That Any of the Alleged Omissions Were Material

The SEC has failed to meet a basic pleading requirement for its claims under Section

17(a)(2) and Rule 10b-5(b).  The Complaint does not allege that the fact that hotel rooms and air

travel were provided to Kilpatrick and Beasley would have been material to the trustees of the

GRS and PFRS in making their investment decisions.

Rather, the Complaint lists the four alleged trips and the amounts invested in the funds.

*See* Compl. ¶¶ 55-115.  Then, the SEC simply parrots the language of the fraud statutes – the

first mention in the Complaint of the term "material."  *Id*. ¶¶ 122, 125.  The Complaint contains

no allegations that the flights and hotel rooms allegedly provided to Kilpatrick and Beasley

would have been material information to the GRS or PFRS trustees, that the four alleged trips

had any affect or impact on their investments with MGRA, or that these items affected the

choices of the investment in the security or altered the total mix of information available.

Merely parroting of the elements of a claim do not satisfy the SEC's pleading requirements

under Rules 12(b)(6) and 9(b).  *Iqbal*, 556 U.S. at 678.  Accordingly, based on the SEC's failure

---

[8]     *See also Otis & Co. v. Securities and Exchange Commission*, 106 F.2d 579 (6th Cir. 1939) (securities dealer need not state every fact about stock offered that prospective purchaser might like to know or that might, if known, tend to influence his decision); *Milton v. Van Dorn Co*., 961 F.2d 965 (1st Cir. 1992) (there is no liability under Rule 10b-5 even if information is material unless there was also duty to disclose that material).

to plead materiality, its claims based on alleged material omissions must be dismissed for this fact alone.

### B.    Mr. Mayfield Had No Duty to Disclose the Hotels and Air Travel Because They Were Not Material As A Matter of Law

Mr. Mayfield had no duty to disclose the hotels and air travel allegedly provided to Kilpatrick and Beasley because they were immaterial to the investments of the GRS and PFRS. No applicable state or federal law or SEC rule or guidance in place at the time of the allegations in the Complaint addressed the circumstances of alleged gifts or political contributions.[9]

Even assuming the existence of a fiduciary relationship, Mr. Mayfield was not required to disclose the flights and hotel rooms because the four trips were immaterial to the investments. *See Powers,* 57 F.3d at 189*; accord In re Stein,* Admin. Proceeding File 3-9309, 1999 WL 756083 (SEC Initial Decision Release No. 150 (Sept. 27, 1999), at 11-12 (investment advisor has no duty to disclose to client alleged conflict of interest where he obtained jobs for a friend and his son working for a sub adviser to client which enabled them to pay off loans).[10]  As securities laws pertain to fraud in the "offer or sale" of securities or "purchase or sale" of securities, courts hold that a fiduciary's duty to disclose material information applies where a defendant failed to

---

[9]    The SEC's "Pay to Play Rule" was not adopted by the SEC until more than three years *after* the allegations in the Complaint occurred.  *See* 17 C.F.R. § 275.206(4)-5 (final rule promulgated on July 1, 2010 with an effective date of September 13, 2010).  Part of the need to implement the Pay to Play Rule was to protect against gaps or loopholes in the SEC's enforcement scheme.  See Edward Wyatt, *S.E.C. Tightens Rules on Public Pension Funds*, N.Y. Times, June 30, 2010 available at http://www.nytimes.com/2010/07/01/business/01sec.html?_r=1, ("The measure was another attempt to close loopholes that agency officials say have allowed political influence to corrupt aspects of the $2.6 trillion public pension business").  Presumably, if the laws existing at the time of the events in the Complaint covered the alleged conduct, there would not have been a need to promulgate regulations to address such gaps.

[10]    *In re Stein* was *reversed by* 2003 WL 1125746 (SEC Investment Advisers Act Release No. 2114) (March 14, 2003) *but later reaffirmed on reconsideration by* 2004 WL 1778889 (SEC Investment Advisers Act Release No. 2274) (Aug. 9, 2004).

disclose information related to the price and characteristics of the subject security. *See, e.g., Monetta Fin. Services, Inc. v. SEC*, 390 F.3d 952, 955 (7th Cir. 2004) (duty to disclose omission of information regarding mutual fund's assignment of IPO shares to director's accounts). The Complaint does not allege that the flights or hotel rooms affected the characteristics of the security offered for sale. As alleged, MGRA had *already* been serving as a real estate manager for pension holdings for since 2001, had previously recommended investments with MGRA in the MGRA Genesis Value Fund ("GVF"), and in 2005 and 2006 the trustees of the GRS and PFRS had given preliminary approval for investments in GVF. *See generally* Compl. ¶¶ 45-54. All of these facts and circumstances allegedly existed prior to the four alleged trips in 2007. *Id*. ¶ 8.

Further, the hotel rooms and flights allegedly were *requested* by Beasley for a building inspection, *id*. ¶ 59, or to raise money for the Civic Fund, *id*. ¶¶ 85, 99, based on affirmative misrepresentations by Beasley to Mr. Mayfield, and not as part of any affirmative solicitation by Mr. Mayfield or *quid pro quo* used to improve MGRA's business with the pension boards. There is no allegation in the Complaint that the investments or management services rendered were improper or that silence with respect to the trips affected their value, price, or suitability for the pensions or rendered any prior statement incomplete or misleading.[11] The Complaint recognizes that a majority of other trustees – who are not alleged to have received flights or hotel rooms and who had their own independent fiduciary duties as trustees– voted for final approval all investments with MGRA.

---

[11]   Indeed, the fund performed extremely well considering the global financial crisis and housing crisis coincided with these investments.

The other circumstance where courts recognize material omissions arise is where a defendant's undisclosed personal financial interests created such a duty.  *See e.g., SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 188 (1963); *Vernazza v. SEC*, 327 F.3d 851, 858-59 (9th Cir. 2003) (investment adviser has duty to disclose to client that commission varied based upon achieving sales benchmarks).  Mr. Mayfield had no real or perceived conflict of interest because there are no allegations that the flights and hotel rooms had any relation or material effect on the investments and services provided or any undisclosed personal interest of Mr. Mayfield or MGRA.

Mr. Mayfield's silence in this case is not an actionable fraudulent omission.  Accordingly, the SEC fraud claims based upon alleged material omissions that Mr. Mayfield had an affirmative duty to disclose must be dismissed.

## IV.     THE SEC HAS FAILED TO PLEAD A VIABLE CLAIM AGAINST CHAUNCEY MAYFIELD UNDER THE INVESTMENT ADVISERS ACT

Based on the same facts discussed above, the SEC alleges Mr. Mayfield also violated Sections 206(1) and 206(2) of the Investment Advisers Act.  As with the claims under the Securities Act and under the Exchange Act, the SEC's allegations under the Advisers Act must also be dismissed under Rule 12(b)(6).

Quite simply, Mr. Mayfield cannot be liable for fraud under the Advisers Act because he is not an "investment adviser" within the meaning of the statute.  Even if he could be liable, the Complaint fails to state a claim that Mr. Mayfield engaged in fraud under Sections 206(1) or 206(2).

A.     **The Fraud Provisions of Section 206 Do Not Apply To "Persons Associated with Investment Advisers" Like Mr. Mayfield**

The Advisers Act "clearly defines and differentiates among 'investment advisers,'[12] 'persons,'[13] and 'persons associated with investment advisers.'"[14] *Sullivan v. Chase Inv. Serv. Of Boston*, 434 F. Supp. 171, 184-85 (N.D. Cal. 1977).  The statute imposes distinct obligations on "investment advisers" such as registration, licensing, audits, disclosures, fiduciary duties, and recordkeeping, among others.  15 U.S.C. § 80b-3.  The statue also allows the SEC to impose regulatory requirements on "persons associated with investment advisers."  *Id.*

Critically, the fraud provisions in Section 206 authorize the SEC to bring claims *only* against "investment advisor[s]."  *Id.* § 80b-6.  They do not authorize claims against "persons" or "persons associated with investment advisors."  *See SEC. v. PIMCO Advisors Fund Mgmt. LLC,* 341 F. Supp. 2d 454, 470 (S.D.N.Y. 2004).  By contrast, Section 207 of the Advisers Act makes it unlawful for any "person" to make untrue statements in a registration application.  15 U.S.C. § 80b-7.

Citing this distinctive statutory treatment, the court in *PIMCO Advisors* held that individuals employed by investment advisers are not "investment advisers" covered by the statutory provisions in sections 206(1) and 206(2).  *PIMCO Advisors*, 341 F. Supp. 2d at 470

---

[12]  "'[I]nvestment adviser' means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities..."  15 U.S.C. § 80b-2(11).

[13]  A "person" is defined as "a natural person or a company."  15 U.S.C. § 80b-2(16).

[14]  "Persons associated with investment advisors means any partner, officer, or director of such investment adviser (or any person performing similar functions), or any person directly or indirectly controlling or controlled by such investment adviser. . ." 15 U.S.C. § 80b-2(17).

- 16 -

("The SEC cannot charge [fund executives] with violations of Section 206(1) or 206(2) directly, since they are not themselves investment advisers covered by the statutory provision.") *see also Sullivan*, 434 F. Supp. at 184-85 (individuals who are not investment advisers may only be held liable for aiding and betting a violation of section 206).  Based on the plain terms of the statute, "a partner, officer, or director" who falls within the definition of "persons associated with investment advisors," cannot be primarily liable for violations of section 206, which only applies to "investment advisers."  *Id.*; *Sullivan*, 434 F. Supp. at 184-85.  Put another way, only those defendants that are "investment advisers," as distinct from "persons associated with investment advisers," are subject to prosecution for fraud under section 206.  *Id.*

As in *PIMCO* and *Sullivan*, Mr. Mayfield was not an "investment adviser" under the statute and cannot be primarily liable under Section 206.  The SEC's claims under the Adviser's Act must therefore be dismissed.

> **B.    Mayfield Is Not Liable Under Section 206 of the Investment Adviser Act For the Same Reasons the SEC's Other Fraud Claims Fail**

Sections 206(1) and 206(2) of the Advisers Act incorporate virtually identical language as contained in Sections 17(a)(1) and 17(a)(3) of the Securities Act and Rules 10b-5(a) and 10b-5(c) under the Exchange Act.  For this reason, the provisions have been interpreted to incorporate the same theories of fraud.  *SEC v. Capital Gains Research Bureau, Inc*., 375 U.S. 180 (1963); *SEC v. Slocum, Gordon & Co*., 334 F. Supp. 2d 144 (D.R.I. 2004).  Accordingly, for the same reasons the SEC has failed to state a claim upon which relief may be granted under either scheme or omissions theories under Section 17(a) and Rule 10b-5, as stated above, the claims under the Advisers Act also must be dismissed.

- 17 -

## CONCLUSION

For the reasons set forth above, Chauncey Mayfield respectfully asks that the Complaint of the SEC be dismissed.

Respectfully submitted,

/s/ *Terence Healy*
A. Scott Bolden
Terence M. Healy
Daniel Z. Herbst
REED SMITH LLP
1301 K Street NW
Suite 1100 – East Tower
Washington, DC 20005
(202) 414-9200
(202) 414-9299 (fax)
thealy@reedsmith.com

Hans J. Massaquoi (P44748)
LEWIS & MUNDAY, PC
660 Woodward Avenue
Suite 2490, First National Building
Detroit, MI  48226
Phone: (313) 961-2550
Fax: (313) 961-1270
hmassaquoi@lewismunday.com

ATTORNEYS FOR DEFENDANT
CHAUNCEY MAYFIELD

## CERTIFICATE OF SERVICE

I certify that on July 31, 2012, I electronically transmitted Defendant Chauncey

Mayfield's Motion to Dismiss under Rule 12(b)(6) and Memorandum in Support to the Clerk of

the Court using ECF system for filing and transmittal of a Notice of Electronic Filing to all ECF

registrants in this action, and I hereby certified that I have mailed by First Class Mail a copy of

the foregoing upon the following:

Kwame M. Kilpatrick
3012 Pamplona Street
Grand Prairie, TX 75052


Jeffrey W. Beasley
5120 West Kenwood Avenue
Unit #3
Chicago, IL 60615


/s/ *Terence Healy*
Terence Healy
REED SMITH LLP
1301 K Street NW
Suite 1100 – East Tower
Washington, DC 20005
(202) 414-9200
(202) 414-9299 (fax)
thealy@reedsmith.com

- 19 -